IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Fifth Third Bank, National Association, | : | Case No. 1:23-cv-528 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | |
| Tranquility Chevrolet, Inc., *et. al*, | : | **Order Transferring Case to the United** |
| | : | **States District Court for the Eastern** |
| Defendants. | : | **District of California, Fresno Division** |

This matter is before the Court on the Motion to Dismiss Pursuant to Rule 12(b)(3) for Improper Venue or, in the Alternative, to Transfer this Action to the Eastern District of California, Fresno Division filed by Defendants Tranquility Chevrolet, Inc. and Brent I. Smith. (Doc. 17.)  Plaintiff Fifth Third Bank, National Association ("Fifth Third") opposes the Motion. (Doc. 26.)  For the reasons that follow, the Motion will be **GRANTED**, and the case will be **TRANSFERRED** to the United States District Court for the Eastern District of California, Fresno Division.

**I.    FACTS**

   **A.  Facts Alleged in the Complaint**

Plaintiff Fifth Third Bank, National Association ("Fifth Third") is a national banking association with its principal place of business in Cincinnati, Ohio. (Doc. 1 at PageID 2.) Tranquility Chevrolet, Inc. ("Tranquility) is a California corporation that operates a car dealership in Tranquility, California. (*Id*.)  Brent Ian Smith ("Smith") is the owner, operator and manager of Tranquility and resides in Fresno, California. (*Id*.) John Does 1–10 are unknown defendants who are "in some manner responsible for the acts, occurrences, and transactions" set forth in the Complaint. (*Id*.)

1

On October 19, 2020 Fifth Third and Tranquility, through Smith, entered into a Fifth Third Dealer Agreement ("Dealer Agreement"). (*Id*. at PageID 3; Doc. 1-1.) The purpose of the Dealer Agreement was to set forth terms of a financing plan in which Tranquility could offer Fifth Third's financing services to its customers in connection with the sale of new and pre-owned cars and trucks at its dealership. (*Id*.) Tranquility agreed to representations and warranties and that it would be liable to Fifth Third for a default by a customer in the case of fraud, willful misconduct, breach, or any misrepresentation by it or its employees or agents. (*Id*. at PageID 3–4; Doc. 1-1.) The parties also agreed that Tranquility would indemnify Fifth Third from expenses and costs it may incur by breach or violation of the terms of the Dealer Agreement. (*Id*. at PageID 5; Doc. 1-1.)

Fifth Third alleges that from July 2021 to October 2021, Tranquility submitted eleven fraudulent loan applications to Fifth Third. (*Id*.) For each of the fraudulently obtained loans, a dealer representative forged loan documents without authorization of the customer and submitted those documents to Fifth Third for financing. (*Id*.) The dealer supplied forged or false loan documents to Fifth Third for the express purpose of receiving payment for vehicles that were not actually sold by the dealer as part of its scheme to defraud Fifth Third. (*Id*.) Fifth Third alleges that the forgery or falsification was known, authorized, and/or ratified by Smith, who has a history and pattern of conducting and engaging in fraudulent business activities. (*Id*.) Pursuant to the terms of the Dealer Agreement, and in reliance upon the forged and/or falsified information supplied by Tranquility to Fifth Third, Fifth Third paid Tranquility over $530,000.00. (*Id*.)

Fifth Third alleges that loan documents were fraudulently submitted to Fifth Third for financing to purchase the following eleven vehicles. On July 6, 2021, loan documents including

the name and personally identifiable information of Brent Smith were allegedly fraudulently submitted to obtain financing totaling $76,943.49 for Loan No. XXXXX7016 ("Loan 1") to purchase a 2021 Chevrolet Silverado 2500 ("Vehicle 1") from Tranquility. (*Id*. at PageID 6.) On October 19, 2021, loan documents including the name and personally information of Raymond Mendez were allegedly fraudulently submitted to Fifth Third to obtain financing totaling $20,641.25 for Loan No. XXXXX2566 ("Loan 2") to purchase a 20219 Honda Civic ("Vehicle 2") from Tranquility. (*Id*. at PageID 7–8.) On October 19, 2021, loan documents including the name and personally identifiable information of Diego Vega were allegedly fraudulently submitted to obtain financing totaling for $62,084.25 for Loan No. XXXXX9922 ("Loan 3") to purchase a 2017 GMC Yukon ("Vehicle 3") from Tranquility. (*Id*. at PageID 9–10.)

On October 19, 2021, loan documents including the name and personally information of Jose Gonzalez were allegedly fraudulently submitted to Fifth Third to obtain financing totaling $50,628.25 for Loan No. XXXXX5315 ("Loan 4") to purchase a 2021 Chevrolet Silverado 1500 ("Vehicle 4") from Tranquility. (*Id*. at PageID 10–12.) On October 19, 2021, loan documents including the name and personally information of Tony Ratsavong were allegedly fraudulently submitted to Fifth Third to obtain financing totaling $34,938.25 for Loan No. XXXXX9148 ("Loan 5") to purchase a 2018 Dodge Charger ("Vehicle 5") from Tranquility. (*Id*. at PageID 12–13.) On October 19, 2021, loan documents including the name and personally information of Francisco Del Campo were allegedly fraudulently submitted to Fifth Third to obtain financing totaling $40,432.25 for Loan No. XXXXX9674 ("Loan 6") to purchase a 2021 Chevrolet Silverado 1500 ("Vehicle 6") from Tranquility. (*Id*. at PageID 14–15.)

On October 19, 2021, loan documents including the name and personally information of Luis Baeza were allegedly fraudulently submitted to Fifth Third to obtain financing totaling $51,953.25 for Loan No. XXXXX1256 ("Loan 7") to purchase a 2021 Chevrolet Silverado 1500 ("Vehicle 7") from Tranquility. (*Id*. at PageID 15–16.) On October 19, 2021, loan documents including the name and personally information of Robert Delgado were allegedly fraudulently submitted to Fifth Third to obtain financing totaling $48,841.25 for Loan No. XXXXX9463 ("Loan 8") to purchase a 2021 Chevrolet Silverado 1500 ("Vehicle 8") from Tranquility. (*Id*. at PageID 17–18.)

On October 19, 2021, loan documents including the name and personally information of Conrado Diaz were allegedly fraudulently submitted to Fifth Third to obtain financing totaling $51,097.25 for Loan No. XXXXX8997 ("Loan 9") to purchase a 2021 Chevrolet Silverado 2500 ("Vehicle 9") from Tranquility. (*Id*. at PageID 18–19.) On October 13, 2021, loan documents including the name and personally information of Anna De La Torre were allegedly fraudulently submitted to Fifth Third to obtain financing totaling $50,183.25 for Loan No. XXXXX8417 ("Loan 10") to purchase a 2021 Chevrolet Silverado 1500 ("Vehicle 10") from Tranquility. (*Id*. at PageID 20–21.) On October 8, 2021, loan documents including the name and personally information of Martin Arambula were allegedly fraudulently submitted to Fifth Third to obtain financing totaling $62,229.00 for Loan No. XXXXX6693 ("Loan 11") to purchase a 2018 Cadillac Escalade ("Vehicle 11") from Tranquility. (*Id*. at PageID 21–23.)

Plaintiff alleges the following claims: (1) breach of the Dealer Agreement by Tranquility; (2) breach of the Retail Installment Contract and Security Agreement ("RICSA") by Smith; (3) fraudulent misrepresentation by Tranquility and Smith; (4) unjust enrichment by Tranquility and Smith; (5) shareholder liability such that the corporate existence of Tranquility should be

4

disregarded as a result of improper and fraudulent conduct of Smith, rendering Smith jointly and severally liability in contract and equity to Fifth Third. (*Id*. at PageID 23–28.)

### B. Affidavit of Brent Ian Smith[1]

In support of their Motion, Defendants filed the Declaration of Brent Ian Smith, who was the Chief Financial Officer of Tranquility. (Doc. 17-1 at PageID 222.) Smith attests that he is a resident of San Luis Obispo County, California. (*Id*. at PageID 223.) He has never lived in Ohio, has not had a business operating in Ohio, and never went to Ohio regarding matters with Tranquility or Fifth Third. (*Id*.) Neither he nor Tranquility had or have maintained an office or employees in Ohio. (*Id*.) At all times relevant to the action, Tranquility maintained a single car dealership in the City of Tranquility, in Fresno, California. (*Id*.) Tranquility is incorporated in California, does not have a car dealership in Ohio, does not have offices, employees, or representatives in Ohio, and does not advertise goods and services in Ohio. (*Id*.)

Smith attests that he has direct and personal knowledge that Fifth Third has employees and representatives in California, including in Fresno County. (*Id*.) He recalls that there was contact with Fifth Third's representatives, who were in charge of its dealer business development/relations in the Fresno County area, contacting Tranquility's physical location in Tranquility, California and actively soliciting it to assign automobile loans to Fifth Third. (*Id*. at PageID 223–224.)

Smith reviewed the Complaint filed in this case as well as the exhibits thereto. (*Id*. at PageID 224.) In the ordinary course of business, only he would have executed an Agreement like Exhibit A on behalf of Tranquility. (*Id*.) The signature on Exhibit A is not his signature, nor

---

[1] Defendants also filed the Declaration of Roger S. Bonakdar, an attorney licensed to practice law in the state of California, who attests that he raised concerns about improper venue with counsel for Fifth Third and sought a stipulation to transfer this action, but Fifth Third refused. (Doc. 17-2 at PageID 227–228.)

is it the signature of any officer of Tranquility. (*Id*.) He attests: "I never signed such an agreement with Plaintiff." (*Id*.) To the extent Tranquility assigned any contracts to Fifth Third for funding, the transaction would have originated in Fresno County, California. (*Id*.) Tranquility engaged in in-person sales transactions, meaning the underlying buyer/consumer would be physically present in California, and have signed and taken delivery of a vehicle in California and never in Ohio. (*Id*.) To the extent financing agreements existed between Fifth Third and Tranquility, Smith would have signed them on behalf of Tranquility while at the dealership in Tranquility. (*Id*.) Neither he nor any representative of Tranquility traveled to Ohio to discuss or enter into any agreement with Fifth Third. (*Id*.)

Smith attests that neither he nor any Tranquility representative traveled to Ohio concerning any of the vehicle loans described in the Complaint. (*Id*. at PageID 225.) To the extent any transaction was done relating to Tranquility and Fifth Third, the Credit Applications and Retail Installment Contract and Security Agreements ("RICSAs") were filled out in Tranquility's sole dealership in Tranquility, California and submitted in person to Fifth Third Bank's California representatives, or electronically, with any and all persons acting on behalf of Tranquility being in Fresno County, California. (*Id*.)

Tranquility's business records are located in Tranquility, California, and all employees which would have to testify are residents of California. (*Id*.) Smith attests that if the case continues in Ohio, it will cause him and Tranquility undue burden, be prejudicial, and impose unreasonable economic, legal, and personal hardships. (*Id*.) Smith will need to retain counsel in California and Ohio for himself and Tranquility, and appearances will require him to travel from California to Ohio, incurring unreasonable travel and lodging expenses. (*Id*.) All witnesses

6

Tranquility would call, specifically, each party to the underlying vehicle sale/loan transaction, are residents of California. (*Id*.)

### C. Affidavit of Jason Tenace

In support of its Response in Opposition, Fifth Third submitted the Affidavit of Jason Tenace, who is an Indirect Fraud Analyst for Fifth Third Bank, National Association. (Doc. 25-1 at PageID 931.) He attests that he is familiar with how business records are maintained by Fifth Third for originating and servicing automobile and installment loans, and he has direct access to those records. (*Id*. at PageID 932.) He attests to the authenticity of the business records attached to his Affidavit, which include the Dealer Agreement signed by Smith. (*Id*. at PageID 932–933.) He attests that in negotiating and executing the Dealer Agreement, Tranquility's employees, agents, and/or representatives, including Smith, communicated with Fifth Third. (*Id*. at PageID 933.) He examined the business records relating to the eleven loans at issue in this case. (*Id*. at PageID 933–936.) Tranquility's employees, agents, and/or representatives initiated contact with Fifth Third in connection with financing all eleven loans. (*Id*. at PageID 936.) Tranquility's employees, agents, and/or representatives submitted eleven Credit Applications and RICSA agreements to Fifth Third in connection with the eleven loans and assigned the various RICSA agreements to Fifth Third in connection with those loans. (*Id*.) Fifth Third relied upon the Credit Applications and RICSA agreements sent by Tranquility in connection with providing financing for the eleven loans. (*Id*.) Fifth Third, through personnel located in Hamilton County, Ohio, performed many of the financing and servicing obligations under the Agreement and RICSAs for the eleven loans.

### D. Affidavit of James Tyler Boyle

In support of its Response in Opposition, Fifth Third also submitted the Affidavit of James Tyler Boyle, Assistant Vice President and Senior Associate of Business Controls for Fifth Third. (Doc. 25-2 at PageID 1066.) He attests that Fifth Third is a national banking association with its principal place of business in Cincinnati, Ohio. (*Id*.) It is a wholly-owned, indirect subsidiary of Fifth Third Bankcorp, a publicly-traded corporation, also with its principal place of business in Cincinnati, Ohio. (*Id*. at PageID 1066–1067.) Boyle is familiar with the manner in which business records for originating and servicing automobile and installment loans are compiled, maintained, and retrieved, and he has direct access to those records. (*Id*. at PageID 1067.) Those records are maintained by Fifth Third and stored electronically and kept in the course of business. (*Id*.) Boyle communicated with Tranquility's employees, agents, and/or representatives, including Smith, via telephone or email from Hamilton County, Ohio or Butler County, Ohio. (*Id*.)

He attests that Exhibit A to the Complaint is a true and accurate copy of the Fifth Third Dealer Agreement entered into between Fifth Third Bank and Tranquility, which was signed by Smith and is part of Fifth Third's business records. (*Id*.) At no time did Smith indicate that he did not sign the Dealer Agreement. (*Id*.) He also attests that five communications attached to his Affidavit are true and accurate copies of email correspondence he had with Smith. (*Id*. at PageID 1068.)

### E. Procedural History

Fifth Third filed this action on August 24, 2023. (Doc. 1.) On March 6, 2024, Defendants filed a Motion to Dismiss the action pursuant to Rule 12(b)(3) for lack of venue, or in the alternative, to transfer the action to the United States District Court for the Eastern District

8

of California, Fresno Division.[2] (Doc. 17.) Plaintiffs responded in opposition, and Defendants replied. (Docs. 26,[3] 35.[4]) On June 20, 2024, Defendants filed an Amended Motion to Dismiss. (Doc. 36.) Plaintiff responded in opposition, and Defendants replied. (Docs. 39, 40.) The matter is now fully ripe.

**II.     LAW**

**A.  Improper Venue Under Rule 12(b)(3)**

Defendants seek to dismiss or alternatively to transfer this action due to improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). Venue in a civil action is appropriate in the following districts:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). When venue is challenged as improper, "a plaintiff's well-pled allegations pertaining to venue issue[s] are taken as true, unless contradicted by a defendant's affidavits." *Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, 672 F. Supp. 3d 538, 542 (S.D. Ohio 2023) (citation omitted). The district court can examine facts outside the complaint, but it

---

[2] Defendants filed a Motion to Dismiss or Transfer (Doc. 16) the day prior. The following day, Defendants filed a seemingly amended Motion to Dismiss or Transfer (Doc. 17) without explanation. The Court will **DENY AS MOOT** the Motion to Dismiss filed as Doc. 16 and instead consider the subsequently filed Motion to Dismiss. (Doc. 17.)

[3] Defendants initially filed a Response in Opposition (Doc. 24), followed by a seemingly Amended Response in Opposition the following day (Doc. 26). The Court will consider the later filed Response (Doc. 26) and disregard the prior-filed Response. (Doc. 24.)

[4] The originally-filed Reply brief was not in compliance with Local Rule 5.1(c). (Doc. 33.) Defendants refiled the Reply as Doc. 35.

must draw all reasonable inferences and resolve factual disputes in favor of the plaintiff. *Id*. Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

### B. Discretionary Change of Venue Under 28 U.S.C. § 1404(a)

A district court may exercise discretion to transfer an action under 28 U.S.C § 1404(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "In deciding a § 1404(a) motion, a district court 'has broad discretion to grant or deny' the motion." *Slate Rock Const. Co. Ltd. v. Admiral Ins. Co*., No. 2:10-cv-1031, 2011 WL 3841691, at *5 (S.D. Ohio Aug. 30, 2011) (quoting *Phelps v. McClellan,* 30 F.3d 658, 663 (6th Cir. 1994)). The moving party bears the burden of proving a change in venue is warranted. *Id*.

### III. ANALYSIS

#### A. Venue

Defendants move under 12(b)(3) only in seeking to transfer venue of this action. However, under 28 U.S.C. § 1391(c)(2), for venue purposes:

> an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business;

28 U.S.C.A. § 1391(c)(2). Venue is appropriate in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or "if there is no district in which an action may otherwise be brought as provided in this section, any judicial

district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1), (3). Here, venue is also appropriate because a defendant entity like Tranquility is deemed to reside wherever a court may exercise jurisdiction over it. 28 U.S.C. § 1391(c)(2). *See also Kitchener*, 2022 WL 1154755, at *5 (finding venue proper based on defendant entity's residence); *State of New York v. Amer. Elec. Power Serv. Corp.*, No. 2:04-cv-1098, 2:05-cv-360, 2006 WL 840390, at *12 (S.D. Ohio Mar. 29, 2006) (finding wavier of personal jurisdiction defense defeated venue challenge).

Here, as the Court discusses, Defendants waived their defense to personal jurisdiction, which therefore defeats the venue challenge. After Fifth Third raised the issue of waiver of personal jurisdiction in its Response in Opposition, Defendants asserted in their Reply that there is no personal jurisdiction and that the argument was raised in their initial Motion. The Court disagrees. The initial Motion does not cite Rule 12(b)(2) or otherwise argue lack of personal jurisdiction and the assertions to the contrary are disingenuous. (*See* Doc. 17.) Moreover, Defendants seem to later concede as much given that they moved to amend their Motion to Dismiss after it was ripe to explicitly assert a lack of personal jurisdiction on the basis that a purported drafting error occurred. (*See* Doc. 36.)

Federal Rule of Civil Procedure 12 distinguishes the defenses of lack of personal jurisdiction and improper venue, as they are distinct bases for dismissal. Under Rule 12, a party may assert the following defenses by motion:

> (1) lack of subject-matter jurisdiction;
> (2) lack of personal jurisdiction;
> (3) improper venue;
> (4) insufficient process;
> (5) insufficient service of process;
> (6) failure to state a claim upon which relief can be granted; and
> (7) failure to join a party under Rule 19.

11


Fed. R. Civ. P. 12(b)(1)–(7). Under Rule 12(h), a party waives the defenses listed in Rule 12(b)(2)–(5), which includes personal jurisdiction, by:

> (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or
> (B) failing to either:
> (i) make it by motion under this rule; or
> (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

Fed. R. Civ. P. 12(h). Failure to raise a defense listed cannot be cured later. "Unlike subject-matter and appellate jurisdiction, objections to personal jurisdiction can be and frequently are waived." *Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC,* 912 F.3d 316, 332–33 (6th Cir. 2018) (citing *Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 648 (6th Cir. 2016)). "[I]f a defendant makes a motion under Rule 12(b)(2) to (5) but does not raise lack of personal jurisdiction, any objection is waived by operation of Rule 12(h)(1)." *Id.* (citing *Means*, 836 F.3d at 648–649.)

Here, Defendants imply that the personal jurisdiction argument was preserved by arguing improper venue under Rule 12(b)(3), as the considerations overlap. However, Defendants were clear that they moved *only* under the venue provision of Rule 12(b)(3) and by virtue of their Motion to Amend, admittedly failed to raise personal jurisdiction in their initial Motion to Dismiss or Transfer. Under the clear-cut law of the Sixth Circuit, Defendants waived personal jurisdiction by failing to assert lack of personal jurisdiction in their Motion to Dismiss. *Innovation Ventures*, 912 F.3d at 333 (by failing to object to personal jurisdiction in the initial Rule 12 motion, defendant waived the defense).

The Court will not permit Defendants to amend their Motion to Dismiss to include lack of personal jurisdiction as a basis for dismissal under Rule 15. Under Rule 15, a party may amend a pleading as a matter of course or with the Court's leave. Fed. R. Civ. P. 15(a)(1)–(2).

The law is clear that "a motion to dismiss is not a responsive pleading within the meaning of Rule 15." *Lycan v. City of Lebanon*, 213 F.R.D. 305, 306 (S.D. Ohio 2002) (citing *Plott v. Gen. Motors Corp.*, No. 92-3166, 1993 WL 59316, at *1 (6th Cir. 1993)). *See also* Advisory Committee Notes to Fed. R. Civ. P. 15, 2009 Amendments ("[A] motion is not a 'pleading' as defined in Rule 7."); Fed. R. Civ. P. 7(a) (defining pleading as a complaint, an answer to a complaint, an answer to a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and a reply to an answer if ordered by the court). Moreover, Defendants did not provide the Court with a personal jurisdiction analysis so as to allow the Court to evaluate the substance of its proposed amended motion. For these reasons, Defendants' Motion to Amend (Doc. 36) is **DENIED**. Because Defendants waived personal jurisdiction, venue is appropriate on this basis.

### B. Discretionary Transfer under § 1404(a)

Nonetheless, transfer is warranted under 28 U.S.C § 1404(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "In deciding a § 1404(a) motion, a district court 'has broad discretion to grant or deny' the motion." *Slate Rock*, 2011 WL 3841691, at *5 (quoting *Phelps v. McClellan,* 30 F.3d 658, 663 (6th Cir. 1994)). The moving party bears the burden of proving a change in venue is warranted. *Id*.

In analyzing whether transfer is in the interest of justice, a district court engages in a three-step analysis:

> first [the court] (i) determines the degree of deference owed the plaintiff's forum choice, and then asks if the defendant has met its burden of showing (ii) an adequate alternative forum, and (iii) that the plaintiff's chosen forum is unnecessarily burdensome based on a balancing of public-interest and private-interest factors.

13

*Burdine v. Burdine*, No. 1:22-cv-000383, 2023 WL 8539427, at *3 (S.D. Ohio Dec. 11, 2023) (citing *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F. 4th 209, 214–215 (6th Cir. 2021) (quotation marks removed)). The Court will consider these factors in turn.

1. **Degree of Deference Owed to Plaintiff's Forum Choice**

Fifth Third is located in the Southern District of Ohio and its choice of its home venue holds significant weight. Fifth Third's choice of forum should only be disturbed upon a showing that public and private interests at stake weigh in favor of transfer. *Down-lite Int'l, Inc. v. Altbaier,* No. 1:19CV627, 2019 WL 3562068, at *2–3 (S.D. Ohio Aug. 6, 2019), *review denied, decision aff'd*, No. 1:19-CV-627, 2019 WL 4439099 (S.D. Ohio Sept. 17, 2019).

2. **Adequate Alternate Forum**

Defendants seek transfer of this action to the United States District Court for the Eastern District of California, Fresno Division. There is no dispute that the court would have jurisdiction over the parties in this forum. As is clear from not only the Complaint allegations but also the Affidavits submitted by both parties, the parties conducted business with one another in the Eastern District of California. Thus, this is an appropriate alternate venue.

3. **Balancing Private and Public Factors**

While there are no set factors that the Court must examine, courts have generally examined a host of private and public factors protected by the language of Section 1404(a):

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the

14

> relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Altbaier,* 2019 WL 3562068, at *2–3 (quoting *Slate Rock*, 2011 WL 3841691, at *6). On balance, these factors weigh in favor of transferring this action.

Here, all of the claims at issue have arisen from alleged fraudulent loans made in California by California residents at a California car dealership. The Complaint alleges that Tranquility submitted eleven fraudulent loan applications to Fifth Third whereby a dealer representative forged loan documents without authorization of the customer and submitted those documents to Fifth Third for financing. The fraudulent loans are made by California residents, and any dealer representative of Tranquility who submitted the alleged fraudulent applications is also located in California.

Smith attests that neither he nor Tranquility representatives have traveled to Ohio, and all of the alleged loans and applications were filled out in Tranquility's sole dealership in Tranquility, California. (Doc. 17-1 at PageID 225.) He attests that those forms were submitted to Fifth Third's California representatives or electronically, with all of Tranquility's representatives being in Fresno County, California. (*Id.*) All of Tranquility's business records are located in Tranquility, California, though presumably may be produced in Ohio regardless. (*Id.*) Smith attests that if the case continues in Ohio, it will cause him and Tranquility undue burden, be prejudicial, and impose unreasonable economic, legal, and personal hardships. (*Id.*) Smith will need to retain counsel in California and Ohio for himself and Tranquility, and appearances will require him to travel from California to Ohio, incurring unreasonable travel and lodging expenses. (*Id.*) All witnesses Tranquility would call, specifically, each party to the underlying vehicle sale/loan transaction, are residents of California. (*Id.*)

15

On the other hand, Fifth Third asserts that the harm from the alleged breaches occurred in Ohio, and its witnesses are in Ohio. Servicing and financing the loans occurred in part in Ohio. Tenace and Boyle attest that Fifth Third's records are located in Ohio and that communications between Fifth Third and Tranquility occurred between Fifth Third's employees who were located in Ohio. (*See* Docs. 25-1, 25-2.) Fifth Third asserts that it has a strong private interest in litigating this action at home, where its business records and witnesses are located. Further, as the alleged victim of fraud, the harm is felt in Ohio and litigating this action would be more burdensome if Fifth Third has to bring this action out of state, particularly in a location across the country from its home forum.

As to the public interest factors, practical considerations favor California, as all of the subject loan holders and Tranquility employees are located in California. Requiring at least eleven different individuals who entered into loans to travel to Ohio would be burdensome and expensive and cause significant logistical issues for the Court in terms of managing and scheduling the witnesses at trial. While the Court recognizes that Firth Third has employees in Ohio who would in turn need to travel to California, Fifth Third maintains an office in California and some of its witnesses are located there. Furthermore, Defendants assert that there is a dispute as to whether Smith is subject to an arbitration provision, which would require him to arbitrate his claims in California.[5] The Court has an interest in keeping the case in the same geographic area, as doing so will be more expeditious and cost-effective. While this district has an interest in allowing victims of contract breaches, fraud, and unjust enrichment to pursue a remedy in its district home court, to be sure, California also has a legitimate interest in business

---

[5] *See* Doc. 35 at PageID 1322. Pursuant to Exhibit C to Plaintiff's Complaint, Smith agreed to an arbitration provision requiring arbitration in Smith's state of residence, which is California. (Doc. 1-3 at PageID 43.) The parties also agreed that the claims against Smith are subject to "federal and California law." (Doc. 1-3 at PageID 41.) Smith disputes his signature.

owners and car purchasers to be able to defend themselves against allegations of fraud on a vehicle purchase. On balance, the private and public factors favor a transfer.

The Court will exercise its discretion to transfer of this action to the United States District Court for the Eastern District of California for the convenience of parties and witnesses and in the interest of justice under 28 U.S.C. § 1404(a).

## IV. CONCLUSION

For the reasons stated, Defendants' Motion to Amend (Doc. 36) is **DENIED**. The Court **GRANTS** Defendants' Motion to Dismiss or Transfer (Doc. 17) insofar as the Court orders that this case be **TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**.

**IT IS SO ORDERED**.

Dated: 9/26/2024    S/Susan J. Dlott
                    Judge Susan J. Dlott
                    United States District Court